UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ISRAEL VAZQUEZ,

                Plaintiff,

      -against-

THE CITY OF NEW YORK;
DAVID GRIFFITH; CARLOS TORRES
(individually and in their official capacities),

                Defendants.
------------------------------------------------------------X

COMPLAINT

Jury Trial Demanded



Plaintiff, ISRAEL VAZQUEZ, by his attorneys, LEEDS MORELLI & BROWN, P.C., complaining of Defendants, alleges upon knowledge as to himself and his own actions and upon information and belief as to all other matters, as follows:

### JURISDICTION AND VENUE

1. This action is brought pursuant to 42 U.S.C. § 1983, to redress violation of Plaintiff's constitutional rights in the terms, conditions and privileges of employment of plaintiff by the Defendants, as well as deprivation by the Defendants, acting under color of law, of the policies, ordinances, custom and usage of rights, privileges and immunities secured to the Plaintiff by the Constitution of the United States and all the laws and statutes thereunder, as well as Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq.; the New York State Executive Law, Human Rights Law, Section 290 et seq.; the New York City Human Rights Law, N.Y.C. Admin. Code Title 8; and any other cause of action that can be inferred from the facts set forth herein.

1

2. The jurisdiction of the court is invoked pursuant to 28 U.S.C. §§1331, 1343, and 1367. The pendent jurisdiction of the Court (28 U.S.C. §1367) is invoked over state law causes of action.

3. Venue is proper pursuant to 28 U.S.C. §1391.

4. The jurisdictional prerequisites to this lawsuit have been completed. Plaintiff has filed a formal administrative complaint with the Equal Employment Opportunity Commission and has received a Right to Sue letter. This action is filed within 90 days of Plaintiff's receipt of her Right to Sue letter.

## PARTIES

5. Plaintiff, Israel Vazquez ("Vazquez") was and still is a resident of Bronx County, New York.

6. Defendant, The City of New York, at all times hereinafter mentioned, was and. still is a public employer doing business at 40 Worth Street, New York, NY 10013.

7. Defendant, David Griffith ("Griffith"), was and is a Chief with the DOT, Parking Bureau Division, located at 34-02 Queens Blvd., Long Island City, NY 11101.  Further, Griffith was and/or is responsible for the DOT's maintenance and operation, including, but not limited to, the hiring, firing, promotion and discipline of employees and all other employment related issues. Additionally, Griffith is a policymaker for the DOT, charged with the responsibility of insuring that employees are not subjected to discriminatory and/or retaliatory practices. Griffith had the

2

power to make personnel decisions regarding Plaintiff's employment.

8. Defendant, Carlos Torres ("Torres"), was and is Deputy Director with the DOT, Parking Bureau Division, located at 34-02 Queens Blvd., Long Island City, NY 11101. Further, Torres was and/or is responsible for the DOT's maintenance and operation, including, but not limited to, the hiring, firing, promotion and discipline of employees and all other employment related issues. Additionally, Torres is a policymaker for the DOT, charged with the responsibility of insuring that employees are not subjected to discriminatory and/or retaliatory practices. Torres had the power to make personnel decisions regarding Plaintiff's employment.

## **FACTS**

9. Plaintiff, Israel Vazquez, is a Hispanic male who commenced his employment with the DOT on July 8, 1991.

10. At all times herein, Plaintiff performed his job competently. Accordingly, through the course of his employment, Vazquez has received three promotions, and has risen to the level of Assistant Chief.

11. On July 1, 2005, Plaintiff was updating his time card when he was grabbed on the buttocks by his supervisor, Chief David Griffith.

12. Plaintiff immediately objected to this unwelcome touching. In response, Griffith stared at

Plaintiff and smirked at him. He subsequently stated to Plaintiff his belief that "I can do whatever I want here and get away with it."

13. On July 7, 2005, Vazquez filed a complaint with Ann Williams, EEO Officer/Assistant Commissioner. In his complaint, Vazquez stated that Mr. Griffith had engaged in harassment and inappropriate activity, and also reported that there was inappropriate pornography being viewed throughout the department.

14. Despite this complaint, and additional complaints by Plaintiff regarding the actions of Mr. Griffith, no action was taken by the DOT, and Mr. Griffith remained in his role as Plaintiff's supervisor.

15. As a result of his opposition to discriminatory practices and harassment, Plaintiff was subjected to retaliation.

16. For example, on October 6, 2005, Griffith ordered Vazquez to put on a long sleeve shirt. Plaintiff did not have a long sleeve shirt with him, as it was a warm day, and the DOT's enforcement of its dress code had been traditionally lax. More specifically, DOT employees had been regularly allowed to wear short or long sleeve shirts, depending on the weather conditions. Despite this fact, Griffith singled Plaintiff out, and ordered him to change his shirt.

17. Plaintiff did not have a long sleeve shirt and attempted to compromise with Griffith by offering

4

to go home without pay. Griffith refused and continued to demand that Plaintiff put on a long sleeve shirt.

18. Plaintiff was subsequently suspended for thirty days due to his failure to wear a long sleeve shirt. Upon information and belief, no one had ever previously been suspended for their failure to adhere to dress codes.

19. Furthermore, shortly after Plaintiff's suspension, another employee of the DOT was witnessed by Griffith wearing a short sleeve shirt rather than a long sleeve shirt. When Griffith was asked whether this individual should be disciplined, or even forced to change his shirt, Griffith responded in the negative, and actively dissuaded others from doing so.

20. The day after Plaintiff was suspended, a poster was distributed by the DOT, which alerted all coworkers of Vazquez that he had been suspended and was not permitted entrance to DOT facilities. Upon information and belief, the DOT does not typically distribute posters for other DOT employees who have been suspended for the same or similar reasons.

21. In a further act of retaliation, Griffith and Deputy Director Carlos Torres attempted to force Plaintiff to revoke a valid parking ticket. When Plaintiff came to the conclusion that the summons was validly issued, Griffith and Torres nonetheless continued to pressure Plaintiff to withdraw the ticket. Griffith and Torres began yelling and screaming at Plaintiff, and threatened that they would bring him up on charges if he refused to withdraw the summons. Upon

5

information and belief, Griffith and Torres were attempting to pressure Plaintiff into wrongfully withdrawing a validly issued summons in order to set Plaintiff up for disciplinary action.

22. In fact, after yelling at Plaintiff for an extended period of time, Griffith and Torres subsequently acknowledged that Plaintiff was right not to pull the summons, despite their orders to the contrary.

23. The DOT subsequently proffered charges against Plaintiff, and initiated a Section 75 hearing against Plaintiff due to the incidents of October 6, 2005. This was done despite the fact that Plaintiff had already served a thirty day suspension, and was based on false statements made by Mr. Griffith.

24. Additionally, the DOT has retaliated against Plaintiff, and continues to retaliate against Plaintiff due to his association with another DOT employee (Chief Sylvia Ortiz-Moss) who has brought a lawsuit against the DOT, and his support of her claims of discrimination.

25. In fact, DOT officials will report any interaction between Plaintiff and Ms. Ortiz-Moss to Defendant Torres, who will then berate Plaintiff for his association and/or support of Ms. Ortiz-Moss.

26. In retaliation for opposition to discriminatory practices, Plaintiff has been denied overtime that other similarly situated employees have been granted.

27. Additionally, the Defendants have regularly subjected Plaintiff to further unwarranted discipline and written reprimands to which other similarly situated employees were not subjected.

28. As a direct and proximate result of the aforementioned discrimination, Plaintiff was caused to suffer loss of earnings, accrued benefits, in addition to suffering great pain, humiliation, as well as physical and emotional damages.

### CLAIMS FOR RELIEF

29. The DOT wrongly subjected Plaintiff to a hostile work environment, harassment, adverse employment actions and an atmosphere of adverse employment actions. These actions were based on Plaintiff's opposition to discriminatory practices, and are in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq.; the New York State Executive Law, Human Rights Law, Section 290 et seq.; and the New York City Human Rights Law, N.Y.C. Admin. Code Title 8.

30. The individual defendants aided, abetted, incited, compelled and/or coerced the aforementioned unlawful conduct in violation of New York State Executive Law, Human Rights Law, § 296(6).

31. The Defendants have, while acting under color of state law, deprived Plaintiff of his constitutional rights, as secured by the First Amendment to the United States Constitution, in violation of 42 U.S.C. Section 1983, and all related provisions of the New York State

Constitution. Defendants intentionally committed, condoned or were deliberately indifferent to the aforementioned violations of Plaintiff's constitutional rights. Such deliberate indifference may be inferred in the following ways:

a. Defendants' custom or practice of discriminating, harassing, and/or retaliating against Plaintiff based his engagement in protected activities. The discriminatory and retaliatory practices were so persistent and widespread that they constitute the constructive acquiescence of policymakers.

b. Supervisors failed to properly investigate and address allegations of retaliation, discrimination, and/or harassment.

c. Inadequate training/supervision was so likely to result in the retaliation, and/or discrimination that policymakers can reasonably be said to have been deliberately indifferent to the need to provide better training and supervision.

d. Policymakers engaged in and/or tacitly condoned the retaliation and/or discrimination.

32. The individual Defendants unlawfully participated in and/or permitted the aforementioned harassment and/or retaliation to perpetuate, without abatement, in violation of Plaintiff's constitutional and statutory rights pursuant to 42 U.S.C. Section 1983.

WHEREFORE, Plaintiff demands judgment against Defendants for, all compensatory, emotional, physical, and punitive damages (where applicable), lost pay, front pay, injunctive relief, and any other damages permitted by law. It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled. Plaintiff demands a trial by jury.

Dated: Carle Place, New York
September 5, 2006

Respectfully submitted,

LEEDS, MORELLI & BROWN, P.C.
Attorneys for Plaintiff
One Old Country Road, Suite 347
Carle Place, NY 11514

By: _____
Rick Ostrove (RO-7248)
Thomas Ricotta (TR-1900)